BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
CRAIG W. STRAUB (249032)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
cstraub@bholaw.com

CARLSON LYNCH SWEET KILPELA
   & CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel: 619/762-1910
619/756-6991 (fax)
tcarpenter@carlsonlynch.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KROESSLER, individually and on behalf of all others similarly situated, | Case No.  **'19 CV 0277 CAB JLB** |
| | **CLASS ACTION** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| CVS HEALTH CORPORATION, | |
| Defendant. | **JURY TRIAL DEMANDED** |

BLOOD HURST & O'REARDON, LLP

Case No.

00138193

1   Plaintiff James Kroessler ("Plaintiff") brings this class action complaint
2   against Defendant CVS Health Corporation ("CVS" or "Defendant"),
3   individually and on behalf of all others similarly situated, and allege upon
4   personal knowledge as to Plaintiff's acts and experiences, and, as to all other
5   matters, upon information and belief, including investigation conducted by
6   Plaintiff's attorneys.

7   **NATURE OF THE ACTION**

8   1.   This is a consumer protection class action arising out of Defendant's
9   false and misleading advertising of its CVS Health glucosamine joint health
10   products.

11   2.   Defendant markets, sells and distributes a line of joint health dietary
12   supplements under the "CVS Health" brand name. Defendant represents and sells
13   the CVS Health Glucosamine Products for a single purpose, which is to provide
14   meaningful joint health benefits to all consumers who ingest the Products. The
15   claimed joint health benefits are the only reason a consumer would purchase
16   CVS Health Glucosamine Products. Defendant's advertising claims, however,
17   are false, misleading, and reasonably likely to deceive the public.

18   3.   Each of the CVS Health Glucosamine Products at issue in
19   Defendant's joint health product line, through their labeling and packaging, and
20   through Defendant's other advertising and marketing materials, communicate the
21   same substantive message to consumers: that the CVS Health Glucosamine
22   Products provide meaningful joint health benefits. Defendant conveys this
23   uniform joint health message through its uniform advertising campaign through
24   which Defendant represents that the CVS Health Glucosamine Products provide
25   "JOINT HEALTH," and assists with joint pain, flexibility and mobility including
26   because it provides "improved joint comfort," increases "range of motion,"
27   "strengthen[s] joints," "support[s] flexibility," and "support[s] mobility." *See*
28   Exhibit A attached (the labeling for the CVS Health Glucosamine Products).

CLASS ACTION COMPLAINT   Case No.

BLOOD HURST & O'REARDON, LLP

00138193

1      4.      These representations are designed to induce consumers to believe
2  that Defendant's CVS Health Glucosamine Products actually provide meaningful
3  joint health benefits. The claimed joint health benefits are the only reason a
4  consumer would purchase CVS Health Glucosamine Products.

5      5.      Defendant's CVS Health Glucosamine Products, however, do not
6  support or benefit the health of human joints because the main ingredients in
7  each of Defendant's CVS Health Glucosamine Products at issue, either alone or
8  in combination with other ingredients, are not effective at supporting or
9  benefitting joint health. Numerous well designed and well conducted scientific
10 studies have been conducted on the ingredients, including the core or primary
11 ingredient in the CVS Health Glucosamine Products, glucosamine. They have
12 demonstrated that glucosamine and glucosamine in combination with other
13 ingredients such as chondroitin sulfate or MSM do not promote joint health,
14 strengthen joints or support, improve or treat joint pain, stiffness, range of
15 motion, or discomfort. These studies apply to the Products' target audience,
16 which includes people with joint pain, regardless of whether they have been
17 diagnosed with osteoarthritis. Accordingly, Defendant's joint health
18 representations are false, misleading and deceptive, and its CVS Health
19 Glucosamine Products are worthless.

20     6.      Plaintiff brings this action individually and on behalf of all other
21 similarly situated consumers to halt the dissemination of Defendant's false and
22 misleading representations, correct the false and misleading perception
23 Defendant's representations have created in the minds of consumers, and to
24 obtain redress for those who have purchased any of Defendant's CVS Health
25 Glucosamine Products at issue.

26                          **JURISDICTION AND VENUE**

27     7.      The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2)
28 because the matter in controversy, exclusive of interest and costs, exceeds the

Case No.
CLASS ACTION COMPLAINT

1    sum or value of $5,000,000 and is a class action in which there are in excess of
2    100 class members, and some of the members of the class are citizens of states
3    different from Defendant.

4         8.    This Court has personal jurisdiction over Defendant because
5    Defendant conducts business in California. Defendant has marketed, promoted,
6    distributed, and sold the CVS Health Glucosamine Products at issue in
7    California, rendering exercise of jurisdiction by California courts permissible.

8         9.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and
9    (b) because a substantial part of the events and omissions giving rise to
10   Plaintiff's claims occurred in this district. Venue also is proper under 18 U.S.C.
11   § 1965(a) because Defendant transacts substantial business in this district.

12                              **PARTIES**

13        10.   Plaintiff James Kroessler is a 69-year-old citizen of the State of
14   California, and, at all times relevant to this action, resided in San Diego,
15   California.

16        11.   On or around March 15, 2017, Plaintiff was exposed to and saw
17   Defendant's representations by reading the label of the CVS Health Glucosamine
18   Chondroitin Tablets product at a CVS retail store located at 2760 Fletcher
19   Parkway, El Cajon, CA 92020. In reliance on the product's joint health
20   representations, Plaintiff purchased Defendant's CVS Health Glucosamine
21   Chondroitin Tablets product for approximately $25.99. Mr. Kroessler purchased
22   the CVS Health Glucosamine Chondroitin Tablets product believing it would
23   provide the advertised joint health benefits, including reduce his joint pain and
24   stiffness. As a result of his purchase of the falsely advertised product, Plaintiff
25   suffered injury in fact and lost money. The CVS Health Glucosamine
26   Chondroitin Tablets product that Plaintiff purchased, like all of Defendant's CVS
27   Health Glucosamine Products at issue, does not provide the promised, advertised
28   benefits. Had Plaintiff known the truth about Defendant's misrepresentations and

BLOOD HURST & O'REARDON, LLP

1  omissions at the time of purchase, Plaintiff would not have purchased
2  Defendant's CVS Health Glucosamine Chondroitin Tablets product. Plaintiff is
3  not claiming physical harm or seeking the recovery of personal injury damages.

4       12.   CVS Health Corporation is a Delaware corporation with its
5  principal place of business located at One CVS Drive, Woonsocket, Rhode
6  Island 02895. CVS manufactures, advertises, markets, distributes, and/or sells
7  the CVS Health Glucosamine Products at issue to tens of thousands of
8  consumers in California and throughout the United States.

9                     **FACTUAL ALLEGATIONS**

10  **I.    *Defendant's CVS Health Glucosamine Products***

11       13.   Defendant sells the CVS Health Glucosamine Products through its
12  own retail website, www.cvs.com, and at its brick-and-mortar CVS retail stores.

13       14.   Defendant's private-label glucosamine products are each sold under
14  the "CVS Health" brand name, and include, but are not limited to, the following
15  (collectively the "CVS Health Glucosamine Products" or the "Products"):

16       • CVS Health Glucosamine Chondroitin Tablets[1]
17       • CVS Health Glucosamine Chondroitin Capsules[2]
18       • CVS Health Glucosamine Maximum Strength Tablets[3]
19       • CVS Health Glucosamine MSM Caplets[4]
20       • CVS Health Glucosamine Chondroitin with MSM Tablets[5]

21
22  [1]     https://www.cvs.com/shop/cvs-health-glucosamine-chondroitin-tablets-150ct-prodid-1013117?skuId=145514
23
24  [2]     https://www.cvs.com/shop/cvs-health-glucosamine-chondroitin-capsules-120ct-prodid-1170193?skuId=416122
25  [3]     https://www.cvs.com/shop/cvs-health-glucosamine-maximum-strength-tablets-1500mg-60ct-prodid-1013095?skuId=247316
26  [4]     https://www.cvs.com/shop/cvs-health-glucosamine-msm-caplets-1500mg-150ct-prodid-1013183?skuId=797748
27
28  [5]     https://www.cvs.com/shop/cvs-health-glucosamine-chondroitin-with-msm-tablets-90ct-prodid-1013079?skuId=247302

BLOOD HURST & O'REARDON, LLP

00138193

**CLASS ACTION COMPLAINT**

- CVS Health Glucosamine Chondroitin with Vitamin D Caplets[6]

15.     The main ingredient in each of the CVS Health Glucosamine Products is glucosamine.

16.     Each of the CVS Health Glucosamine Products contains the same amount of glucosamine (1,500 mg).

17.     Chondroitin is a component of human connective tissues found in cartilage and bone. In supplements, chondroitin sulfate usually comes from animal cartilage.

18.     Sometimes called degenerative joint disease or degenerative arthritis, osteoarthritis is the most common chronic condition of the joints, affecting approximately 27 million Americans. Osteoarthritis can affect any joint, but it occurs most often in knees, hips, hands, and spine. According to the Arthritis Foundation, one in two adults will develop symptoms of osteoarthritis symptoms during their lives, and one in four adults will develop symptoms of hip osteoarthritis.

19.     Many of those who purchase the Products have not yet been diagnosed with arthritis because it is slow developing and has yet to advance to the point where the consumer seeks medical intervention. However, they nonetheless have early-stage arthritis. Knowing this, through its advertising and promotions, including on the Products' packaging, Defendant expressly and impliedly advertises that the Products treat and provide relief from the same symptoms experienced by those people whose arthritis has been diagnosed, including joint pain and joint stiffness.

20.     According to the Mayo Clinic, the signs and symptoms of osteoarthritis include joint pain, joint tenderness, joint stiffness, and the inability

---

[6]     https://www.cvs.com/shop/cvs-health-glucosamine-chondroitin-with-vitamin-d-caplets-120ct-prodid-1013188?skuId=797747

BLOOD HURST & O'REARDON, LLP
Case No.
CLASS ACTION COMPLAINT

to move joints through full range of motion.[7] Symptoms may come and go, and can be mild, moderate or severe.[8]

**II.**   ***Defendant's False and Deceptive Advertising***

21.   Defendant, through its advertisements, including on the CVS Health Glucosamine Products' packaging and labeling, has consistently conveyed to consumers throughout the United States that the Products will support and promote joint health, reduce joint pain and reduce joint stiffness of all persons who ingest the CVS Health Glucosamine Products.

22.   The front labeling for each of the CVS Health Glucosamine Products is materially identical and communicates the very same advertising message. For instance, on the front of the CVS Health Glucosamine Products, prominently and in all caps, Defendant claims "JOINT HEALTH." The front of the labeling for the CVS Health Glucosamine Products also states "Supports flexibility & range of motion," "Supports healthy cartilage & joint comfort," "SUPPORTS JOINT FLEXIBILITY & MOBILITY," and "Nourishes cartilage and promotes comfortable joint movement." *See* Ex. A.

23.   The front label for each of the CVS Health Glucosamine Products also prominently includes a picture of an older man and woman walking. *See* Ex. A. The image repeats and reinforces the Products' overall joint health benefits message, including that it provides relief from pain and stiffness.

24.   For example, the front label of the CVS Health Glucosamine Chondroitin Tablets appears as follows:

---

[7]   https://www.mayoclinic.com/health/osteoarthritis/DS00019/DSECTION=symptoms (last visited December 14, 2018)

[8]   https://www.arthritis.org/Documents/Sections/About-Arthritis/arthritis-facts-stats-figures.pdf (last visited December 14, 2018)

CLASS ACTION COMPLAINT

Case No.

BLOOD HURST & O'REARDON, LLP

00138193

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*See also* Ex. A (labeling for each of the CVS Health Glucosamine Products).

Case No.

00138193

CLASS ACTION COMPLAINT

25.     Defendant furthers these joint health representations made on the packaging and labeling, by repeating and reinforcing the representations on its retail store website (www.CVS.com), including by stating the following about the CVS Health Glucosamine Products: "Glucosamine and Chondroitin help support and maintain the structure of joints;" "helps support maximum flexibility, range of motion, and joint health;" and "Glucosamine and chondroitin work to support joint comfort while helping to promote joint mobility."

26.     Prior versions of Defendant's CVS Health glucosamine-based products also were labeled as "Joint Health" supplements.

27.     Based on the current and former representations contained on Defendant's CVS Health Glucosamine Products' packaging and labeling and on the Products' website, it is clear that the CVS Health Glucosamine Products are intended to induce a common belief in consumers that the CVS Health Glucosamine Products are effective in providing meaningful joint health benefits, including reducing joint pain, reducing joint stiffness and positively impacting the signs and symptoms of arthritis.

### III.   *Scientific Studies Confirm that the CVS Health Glucosamine Products Are Not Effective and Defendant's Joint Health Representations Are False, Deceptive, and Misleading*

28.     Despite Defendant's representations, glucosamine, alone or in combination with other ingredients in the Products, including chondroitin, has been extensively studied in large, well-conducted and published studies involving persons with and without diagnosed arthritis and has been proven to be ineffective at supporting or benefiting joint health, including by positively impacting the signs and symptoms of arthritis.

### Randomized Clinical Trials

29.     Randomized clinical trials ("RCTs") are "the gold standard for determining the relationship of an agent to a health outcome." Federal Judicial Center, *Reference Manual on Scientific Evidence*, 555 (3d ed. 2011). "Double-

Case No.
CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00138193

blinded" RCTs, where neither the trial participants nor the researchers know which participants received the active ingredient is considered the optimal strategy.

30.     Glucosamine and chondroitin have been extensively studied in RCTs, and the well-conducted RCTs demonstrate that glucosamine and chondroitin, alone or in combination, are not effective at producing joint health benefits, including pain, stiffness, range of motion, flexibility, and cartilage benefits.

31.     The leading series of studies testing glucosamine and chondroitin are known as the "GAIT" studies. The GAIT studies were independently conducted, and funded by the National Institutes of Health (the "NIH"). The primary GAIT study cost over $12.5 million.

32.     In 2006, results from the primary GAIT study—a 1,583-patient, 24-month, multi-center RCT—were published in the New England Journal of Medicine (the "2006 GAIT Study"). The 2006 GAIT Study concluded: "[t]he analysis of the primary outcome measure did not show that either [glucosamine or chondroitin], alone or in combination, was efficacious …." Clegg et al., Glucosamine, Chondroitin sulfate, and the two in combination for painful knee osteoarthritis. *New England Journal of Medicine* 354:795-807 (2006). The authors further explained the findings as follows: "Glucosamine and chondroitin sulfate alone or in combination did not reduce pain effectively in the overall group of patients" and "[a]nalysis of the primary outcome in the sub-group of patients with mild pain showed even smaller treatment effects."

33.     The 2006 GAIT Study also concluded that glucosamine hydrochloride, chondroitin, and their combination do not relieve joint stiffness, improve joint function, impact joint swelling, or improve health-related quality of life as measured by eight domains: vitality, physical functioning, bodily pain,

Case No.

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

general health perceptions, physical role functioning, emotional role functioning, social role functioning, and mental health.

34.    In 2008, findings from another NIH-funded GAIT study were published. Sawitzke et al., The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis: A Report from the Glucosamine/Chondroitin Arthritis Intervention Trial. *Arthritis & Rheumatism*, 58(10):3183-3191 (2008). The 2008 GAIT publication explored the effects of glucosamine, chondroitin, and their combination on progressive loss of joint space width. Loss of joint space width is a structural condition associated with increased joint pain and decreased joint mobility and flexibility, and is a precursor of arthritis. The researchers examined 572 persons and found "no significant differences in mean [joint space width] loss over 2 years between the treatment groups and the placebo group …." In other words, glucosamine and chondroitin, alone or in combination do not work and do not impact joint space width loss or otherwise help maintain or rebuild cartilage.

35.    In 2010, the NIH released a third set of results from the GAIT studies. Sawitzke et al., Clinical efficacy and safety over two years use of glucosamine, Chondroitin sulfate, their combination, celecoxib or placebo taken to treat osteoarthritis of the knee: a GAIT report. *Ann Rheum Dis* 69(8):1459-1464 (2010). Authors of the 2010 GAIT report examined 662 persons over a two-year period and concluded that glucosamine and chondroitin, alone or in combination, do not provide pain, function, stiffness or mobility benefits. The authors also determined glucosamine and chondroitin do not benefit those with moderate-to-severe knee pain—a *post-hac*, secondary analysis which the original GAIT publication found inconclusive.

36.    In addition to the three sets of GAIT results, four other RCTs have examined a combination of glucosamine hydrochloride and chondroitin sulfate

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00138193

1  versus placebo. Each of these studies found glucosamine and chondroitin do not

2  work.

3        37.    In 2007, Messier et al. published results from their 12-month,

4  double-blind RCT examining 89 subjects in the United States. Messier et al.,

5  Glucosamine/chondroitin combined with exercise for the treatment of knee

6  osteoarthritis: a preliminary study. *Osteoarthritis and Cartilage*, 15:1256-1266

7  (2007). Messier and co-authors concluded that daily consumption of a

8  combination of glucosamine hydrochloride and chondroitin sulfate does not

9  provide joint pain, function, stiffness or mobility benefits.

10        38.    Fransen et al. (2015) was a double-blind, randomized, placebo-

11  controlled clinical trial examining 605 participants over a 2-year period. Fransen

12  et al., Glucosamine and chondroitin for knee osteoarthritis: a double-blind

13  randomized placebo-controlled clinical trial evaluating single and combination

14  regimens. *Ann Rheum Disease*, 74(5):851-858 (2015). Fransen concluded that

15  glucosamine and chondroitin, alone or in combination, are no better than placebo

16  for reducing pain or improving physical function:

17        For the main symptomatic outcome … no significant effect on
18        maximum knee pain over year 1 … was demonstrated for the three
          treatment allocations, compared with placebo. Over year 2 … there
19        were no differences between the four allocations … and there was
          no significant difference in knee pain reduction between any of the
20        treatment groups and placebo after adjusting for baseline values.
21        Among the subgroup of 221 (37%) participants with severe knee
          pain … at baseline, there were no significant differences with
22        respect to their maximum knee pain or global assessment and score
          across different treatment groups.
23

24  *Id.* at 3-4; *see also id.* at 5-6 ("there were no significant reductions in knee pain

25  detected for glucosamine or chondroitin alone, or in combination, over the 2-year

26  follow-up period versus placebo"). Fransen and her co-authors also concluded

27  "[t]here were no significant differences" between consumption or glucosamine

28  and/or chondroitin versus a placebo pill for any secondary measures. These

BLOOD HURST & O'REARDON, LLP

Case No.
CLASS ACTION COMPLAINT
00138193

1   measures included pain, physical function, and health-related quality of life as
2   measured by physical functioning, role limitations due to physical health
3   problems, bodily pain, general health, vitality (energy/fatigue), social
4   functioning, role limitations due to emotional problems, and mental health
5   (psychological distress and psychological well-being).

6        39.    Using data obtained from NIH-funded initiatives, Yang et al. (2015)
7   analyzed 1,625 participants over a 4-year period to estimate the effectiveness of
8   the combination of glucosamine and chondroitin in relieving knee symptoms and
9   slowing disease progression among patients with knee osteoarthritis. Yang et al.,
10  Effects of glucosamine and chondroitin on knee osteoarthritis: an analysis with
11  marginal structural models. *Arthritis & Rheumatism*, 67(3):714-723 (2015). In
12  their report, which was published in the official journal of the American College
13  of Rheumatology, Yang and co-authors reported that glucosamine and
14  chondroitin combinations provided no clinically significant benefits in terms of
15  reducing pain or stiffness, improving physical function or mobility, or delaying
16  the progression of joint space narrowing or osteoarthritis.

17       40.    Roman-Blas et al. (2017) was a multi-center, randomized, double-
18  blind, placebo-controlled clinical trial involving 164 participants who received a
19  combination of glucosamine and chondroitin or placebo for six months. Roman-
20  Blas et al., Chondroitin sulfate plus glucosamine sulfate shows no superiority
21  over placebo in a randomized, double-blind, placebo-controlled clinical trial in
22  patients with knee osteoarthritis. *Arthritis & Rheumatology*, 69(1):77-85 (2017).
23  Roman-Blas and co-authors found that a combination of glucosamine and
24  chondroitin was inferior to a placebo pill in terms of reducing global pain.
25  Glucosamine and chondroitin were also no better than a placebo pill "in any of
26  the secondary outcomes measures," which included improvement in physical
27  function, reduction in joint pain, or improvement in investigator's global
28  assessment of the participant.

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

41.    In 2016, Lugo et al. also published the results from a study comparing a combination of glucosamine and chondroitin versus placebo. Lugo et al., Efficacy and tolerability of an undenatured type II collagen supplement in modulating knee osteoarthritis symptoms: a multicenter randomized, double-blind, placebo-controlled study. *Nutrition Journal*, 15:14 (2016). Lugo was a multicenter, double-blind RCT examining 190 subjects over 180 days. Lugo and co-authors found that a combination of glucosamine hydrochloride and chondroitin sulfate was no better than placebo in terms of joint pain, stiffness, mobility or physical function.

42.    The results from GAIT and these other clinical studies testing glucosamine and chondroitin combinations versus placebo are also consistent with the reported results of prior and subsequent studies.

43.    For example, a 1999 study involving 100 subjects by Houpt et al. found that glucosamine hydrochloride performed no better than placebo at reducing pain at the conclusion of the eight week trial. Houpt et al., Effect of glucosamine hydrochloride in the treatment of pain of osteoarthritis of the knee. *J. Rheumatol.* 26(11):2423-30 (1999).

44.    Rindone et al. (2000) is a randomized, double-blind, controlled trial of 98 subjects provided 1,500 mg glucosamine or a placebo for two months who were examined for pain intensity while walking and at rest. Rindone et al., Randomized, controlled trial of glucosamine for treating osteoarthritis of the knee. *West J Med*, 172:91-95 (2000). The investigators concluded that glucosamine "was no better than placebo in reducing pain[.]" *Id*. at 91.

45.    Likewise, a 2004 study of 205 participants by McAlindon et al. concluded that "glucosamine was no more effective than placebo in treating symptoms of knee osteoarthritis," meaning glucosamine is ineffective. McAlindon et al., Effectiveness of Glucosamine For Symptoms of Knee Osteoarthritis: Results From and Internet-Based Randomized Double-Blind

Case No.
CLASS ACTION COMPLAINT

00138193

Controlled Trial. *Am. J. Med.* 117(9):643-49 (2004). Dr. McAlindon and his co-authors assessed and found no difference between glucosamine and placebo in terms of pain, stiffness, physical function, or any other assessed outcome. *Id.* at 646 ("[W]e found no difference between the glucosamine and placebo groups in any of the outcome measures, at any of the assessment time points.").

46.    A 2004 study by Cibere et al. studied users of glucosamine who claimed to have experienced at least moderate benefits after starting glucosamine. Cibere et al., Randomized, Double-Blind, Placebo-Controlled Glucosamine Discontinuation Trial in Knee Osteoarthritis. *Arthritis & Rheumatism (Arthritis Care & Research)* 51(5):738-745 (2004). These patients were divided into two groups—one group that was given glucosamine and another group that was given a placebo. For six months, the primary outcome observed was the proportion of disease flares in the glucosamine and placebo groups. A secondary outcome was the time to disease flare. The study results reflected that there were no differences in either the primary or secondary outcomes for glucosamine and placebo. The authors concluded that the study provided no evidence of symptomatic benefit from continued use of glucosamine—in other words, any prior perceived benefits were due to the placebo effect and ***not*** glucosamine. *Id.* at 743 ("In this study, we found that knee OA disease flare occurred as frequently, as quickly, and as severely in patients who were randomized to continue receiving glucosamine compared with those who received placebo. As a result, the efficacy of glucosamine as a symptom-modifying drug in knee OA is not supported by our study.").

47.    A 2008 study by Rozendaal et al. assessed the effectiveness of glucosamine on the symptoms and structural progression of hip osteoarthritis during two years of treatment. Rozendaal et al., Effect of glucosamine sulfate on hip osteoarthritis. *Annals of Internal Medicine*, 148:268-277 (2008). Rozendaal and co-authors examined 222 subjects and concluded that glucosamine was no

BLOOD HURST & O'REARDON, LLP

better than placebo in reducing pain, improving physical function, or impacting the structural progression of osteoarthritis.

48.    In a 2010 report published in the Journal of the American Medical Association ("JAMA"), Wilkens et al. reported the results from their large, double-blind, randomized, placebo-controlled trial that found there was no difference between placebo and glucosamine for the treatment of low back pain and lumbar osteoarthritis and that neither glucosamine nor placebo were effective in reducing pain related disability. Wilkens et al., Effect of glucosamine on pain-related disability in patients with chronic low back pain and degenerative lumbar osteoarthritis. *JAMA*, 304:45-52 (2010). The researchers also concluded that, "Based on our results, it seems unwise to recommend glucosamine to all patients" with low back pain and lumbar osteoarthritis.

49.    In 2011, Magrans-Courtney et al. reported the results from their randomized, double-blind study, which found that glucosamine, chondroitin and methylsulfonylmethane (MSM) "supplementation did not significantly affect remaining markers of isotonic or isokinetic strength, balance, functional capacity, markers of health, self-reported perceptions of pain, or indicators of quality of life." Magrans-Courtney et al., Effects of diet type and supplementation of glucosamine, chondroitin, and MSM on body composition, functional status, and markers of health in women with knee osteoarthritis initiating a resistance-based exercise and weight loss program. *Journal of the International Society of Sports Nutrition*, 8(8):1-17 (2011).

50.    Notarnicola et al. (2011) was a six-month, randomized, double-blind clinical trial involving 60 subjects consuming a daily combination of MSM and boswellic acid or placebo. Efficacy was evaluated at two and six months. At two months, the group consuming the MSM supplement was worse than placebo for pain improvement, and there was no difference between groups in terms of impacting physical function. At six months, there were no differences in pain or

BLOOD HURST & O'REARDON, LLP

00138193

physical function between those persons consuming a placebo or the MSM supplement. Notarnicola et al., The "MESACA" Study: Methylsulfonylmethane and Boswellic Acid in the Treatment of Gonarthrosis. *Adv Ther*, 28(10):894-906 (2011).

51.    Arden et al. (2016) conducted a randomized, double-blind, controlled trial among 474 subjects. Subjects received vitamin D or placebo for three years. The study assessed both joint structural changes (*i.e.*, "joint space narrowing" or "JSN"), as well as changes in pain, function, and stiffness. Results showed that there were no significant differences between those consuming vitamin D and a placebo pill for any of the study's assessed outcomes. Arden et al., The effect of vitamin D supplementation on knee osteoarthritis, the VIDEO study: a randomized controlled trial. *Ostearthritis and Cartilage*, 24:1858-1866 (2016).

52.    Large, well-conducted clinical trials on persons without diagnosed arthritis have also been conducted, and these studies, together with the studies analyzing persons with diagnosed arthritis, also demonstrate that the CVS Health Glucosamine Products do not provide any joint health benefits, including reducing joint pain or stiffness, improving mobility, or slowing the progression of arthritis.

53.    Kwoh et al. (2014) is a report from a randomized, placebo-controlled clinical trial measuring the effect of glucosamine hydrochloride on joint degradation, joint pain, and physical function in 201 individuals. Kwoh et al., Effect of Oral Glucosamine on Joint Structure in Individuals With Chronic Knee Pain: a Randomized, Placebo-Controlled Clinical Trial. *Arthritis & Rheumatology*, 66(4):930-939 (2014). Kwoh, which studied a mix of subjects with and without osteoarthritis, concluded that glucosamine supplementation provided no joint health, structural, pain or physical function benefits:

Case No.

00138193

BLOOD HURST & O'REARDON, LLP

In this 24-week study, we did not find any evidence that glucosamine is more effective than placebo in improving joint health, when assessed according to the outcomes of decreased cartilage deterioration on MRI, improvement of BMLs on MRI, decreased excretion of urinary CTX-II, and decreased pain or improved function.

*Id*. at 935.

54. Runhaar et al. (2015) also examined subjects not diagnosed with arthritis and found no benefits from glucosamine. Runhaar was an independently-analyzed double-blind, placebo-controlled, factorial design trial testing a diet-and-exercise program and 1,500 mg oral glucosamine or placebo on 407 subjects. Runhaar et al., Prevention of Knee Osteoarthritis in Overweight Females: The First Preventative Randomized Controlled Trial in Osteoarthritis. *Am J Med*, 128(8):888-895 (2015). Researchers examined the impact of daily glucosamine consumption on the incidence of knee osteoarthritis, as well as on pain and physical function. After 2.5 years, no effect from glucosamine was found on subjects' overall quality of life or knee pain, physical function, or the incidence of knee osteoarthritis.

55. Based on data from 245 people without diagnosed osteoarthritis, de Vos et al. (2017) determined the impact of glucosamine consumption over an average time period of 6.6 years. de Vos et al., Long-term effects of a lifestyle intervention and oral glucosamine sulphate in primary care on incident knee OA in overweight women. *Rheumatology*, 56(8):1326-1334 (2017). Study participants consumed placebo or 1,500 mg daily glucosamine and periodically reported knee pain, physical activity and quality of life, and had their joint space width was measured by radiograph. Based on six-year analysis, de Vos and co-researchers concluded that glucosamine consumption is not effective at preventing knee osteoarthritis as measured according to either joint space width changes or based on symptomatic changes that included impact on knee pain or joint stiffness.

BLOOD HURST & O'REARDON, LLP

17

Case No.

CLASS ACTION COMPLAINT

56.     Tennet et al. (2017), reports the results of a randomized, double-blind, placebo-controlled trial evaluating the use of MSM to improve physical function and quality of life, and to reduce pain in healthy persons. 180 subjects were assigned to either a placebo or 3,000 mg MSM daily for eight weeks. The study's primary outcome measures were the Knee Osteoarthritis Outcome Score (KOOS) and the Profile of Moods States (POMS). The five KOOS subscales analyzed by Tennet et al. were: (1) knee pain; (2) other symptoms (*e.g.*, swelling, grinding or clicking when moving your knees, knee bending, and knee straightening); (3) physical function in daily living (*i.e.*, the ability to move around); (4) physical function in sport and recreation (*e.g.*, difficulty squatting, running, jumping, pivoting and kneeling); and (5) knee-related quality of life. The authors found that MSM did not work at any time: "MSM administered daily did not provide significant improvements in the 5 KOOS subscales or the 9 POMS subscales at 30 or 60 days." Tennet et al., A Randomized Controlled Trial Evaluating Methylsulfonylmethane Versus Placebo to Prevent Knee Pain in Military Initial Entry Trainees. *US Army Med Dep J.*, Oct-Dec;(3-17):21-25 (2017).

**Meta-analyses and Scientific Review Articles**

57.     Well-conducted meta-analyses are considered a higher level of evidence than individual clinical trials as they provide a method to evaluate the aggregated results of all relevant studies according to their pooled effects and methodological quality.

58.     In a 2007 meta-analysis, Vlad et al. reviewed all randomized, double-blind, placebo-controlled studies involving glucosamine hydrochloride and concluded that "[g]lucosamine hydrochloride is not effective." Vlad et al., Glucosamine for pain in osteoarthritis: Why do the trials differ? *Arthritis & Rheumatism*, 56:2267-2277 (2007); *see also id.* at 2275 ("[W]e believe that there

BLOOD HURST & O'REARDON, LLP

is sufficient information to conclude that glucosamine hydrochloride lacks efficacy for pain in OA.").

59.    In 2009, Towheed et al. published an updated Cochrane Collaboration Review examining glucosamine (first published in 2001 and previously updated in 2005). Towheed et al., Glucosamine therapy for treating osteoarthritis. *Cochrane Database Syst Rev*, 2:CD002946 (2009). The 2009 Cochrane Review was based on a high-quality systematic review and meta-analysis of 25 glucosamine studies involving 4,963 patients. Like the 2001 and 2005 reviews, the 2009 Cochrane Review found that pooled results from studies using a non-industry preparation of glucosamine or adequate study methodology failed to show any benefits of glucosamine for pain or function. According to the researchers, "[t]he high quality studies showed that pain improved about the same whether people took glucosamine or fake pills."

60.    A 2010 meta-analysis by Wandel et al. examined prior studies involving glucosamine and chondroitin, alone or in combination, and whether they relieved the symptoms or progression of arthritis of the knee or hip. Wandel et al., Effects of glucosamine, Chondroitin, or placebo in patients with osteoarthritis of hip or knee: network meta-analysis. *BMJ*, 341:4675 (2010). This independent research team reported that glucosamine and chondroitin, alone or in combination, did not reduce joint pain or have an impact on the narrowing of joint space: "Our findings indicate that glucosamine, chondroitin, and their combination do not result in a relevant reduction of joint pain nor affect joint space narrowing compared with placebo." *Id*. at 8. The authors further concluded "[w]e believe it unlikely that future trials will show a clinically relevant benefit of any of the evaluated preparations." *Id.*

61.    In 2011, Miller and Clegg, after surveying the clinical study history of glucosamine and chondroitin, concluded that, "[t]he cost-effectiveness of these dietary supplements alone or in combination in the treatment of OA has not

19

Case No.

CLASS ACTION COMPLAINT

been demonstrated in North America." Miller K & Clegg D, Glucosamine and Chondroitin Sulfate. Rheum. *Dis. Clin. N. Am.*, 37:103-118 (2011).

62. In 2012, a report by Rovati et al. noted that glucosamine hydrochloride "ha[s] never been shown to be effective." Rovati et al., Crystalline glucosamine sulfate in the management of knee osteoarthritis: efficacy, safety, and pharmacokinetic properties. *Ther Adv Muskoloskel Dis*, 4(3):167-180 (2012).

63. Reid et al. (2014) conducted a systematic review and meta-analysis of studies, which analyzed the effectiveness of vitamin D supplements on bone mineral density. 23 clinical studies were included, and these studies provided 70 tests of statistical significance. Out of the 70 tests, 62 found a non-significant benefit of vitamin D on bone mineral density. The authors concluded the "widespread use of vitamin D for osteoporosis prevention in community-dwelling adults without specific risk factors for vitamin D deficiency seems to be inappropriate." Reid et al., Effects of vitamin D supplements on bone mineral density: a systematic review and meta-analysis. *Lancet*, 383(9912):146-55 (2014).

64. The 2014 meta-analysis by Eriksen et al. included 25 glucosamine trials, which collectively involved 3,458 patients. Eriksen et al., Risk of bias and brand explain the observed inconsistency in trials on glucosamine for symptomatic relief of osteoarthritis: A meta-analysis of placebo-controlled trials. *Arthritis Care & Research* 66:1844-1855 (2014). Eriksen and co-authors found that "[i]n accordance with a previous analysis, we found that glucosamine hydrochloride had no effect on pain" and "glucosamine by and large has no clinically important effect."

65. A 2017 scientific review by Vasiliadis and Tsikopoulous concluded that "[t]here is currently no convincing information on the efficacy of [glucosamine] or [chondroitin] as treatment options in [osteoarthritis]," and "when only the information from best quality trials is considered, then none of

BLOOD HURST & O'REARDON, LLP

00138193

these supplements seem to demonstrate any superiority [as compared to placebo pill]." Vasiliadis HS & Tsikopoulous K, Glucosamine and chondroitin for the treatment of osteoarthritis. *World J Orthop*, 8(1):1-11 (2017).

66.    Hussain et al. (2017) conducted the first systematic review of clinical trials comparing the effects of vitamin D supplementation in persons with knee OA. Five studies (1,189 subjects) were included in the review. Clinical and structural outcomes were assessed. Based on their systematic review the study authors found that "The result demonstrated no significant improvement in the patients with knee OA receiving vitamin D supplementation." Hussain et al., Vitamin D supplementation for the management of knee osteoarthritis: a systematic review of randomized controlled trials. *Rheumatol Int*, 37:1489-1498 (2017).

67.    In 2017, Runhaar and co-authors presented results from their meta-analysis of six glucosamine studies (examining 1,663 patients) where the original authors agreed to share their study data for critical re-analysis. Runhaar et al., Subgroup analyses of the effectiveness or oral glucosamine for knee and hip osteoarthritis: a systematic review and individual patient data meta-analysis from the OA trial bank. *Ann Rheum Dis*, 76(11):1-8 (2017). Runhaar (2017) is an "individual patient data meta-analysis" or IPD, which is considered a gold standard of systematic review. The Runhaar IPD meta-analysis concluded that glucosamine has no effect on pain or physical function: "[T]he current IPD on the efficacy of glucosamine … did not identify a subgroup for which glucosamine showed any significant beneficial effects over placebo for pain or function in either the short term or long term."

**Professional Guidelines**

68.    Professional guidelines are also consistent in their recommendation against using glucosamine or chondroitin.

Case No.

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00138193

69. For example, the National Collaborating Centre for Chronic Conditions ("NCCCC") reported "the evidence to support the efficacy of glucosamine hydrochloride as a symptom modifier is poor" and the "evidence for efficacy of chondroitin was less convincing." NCCCC, Osteoarthritis National Clinical Guideline for Care and Management of Adults, Royal College of Physicians, London 2008. Consistent with its lack of efficacy findings, the NCCCC Guideline did not recommend the use of glucosamine or chondroitin for treating osteoarthritis. *Id*. at 33.

70. In December 2008, the American Academy of Orthopaedic Surgeons (AAOS) published clinical practice guidelines for the "Treatment of Osteoarthritis of the Knee (Non-Arthroplasty)," and recommended that "glucosamine and/or chondroitin sulfate or hydrochloride not be prescribed for patients with symptomatic OA of the knee." This recommendation was given a grade A, the highest level of recommendation. Richmond et al., Treatment of osteoarthritis of the knee (nonarthroplasty). *J. Am. Acad. Orthop. Surg.*, 17(9):591-600 (2009). This recommendation was based on a 2007 "high quality systematic review" from the Agency for Healthcare Research and Quality (AHRQ), which states that "the best available evidence found that glucosamine hydrochloride, chondroitin sulfate, or their combination did not have any clinical benefit in patients with primary OA of the knee." Samson et al., Treatment of Primary and Secondary Osteoarthritis of the Knee. Evidence Report/Technology Assessment, Number 157. *Prepared for Agency for Healthcare Research and Quality, U.S. Department of Health and Human Services*, Publication No. 07-E012 (2007).

71. In 2009, a panel of scientists from the European Food Safety Authority ("EFSA") (a panel established by the European Union to provide independent scientific advice to improve food safety and consumer protection), reviewed nineteen studies submitted by an applicant, and concluded that "a cause

BLOOD HURST & O'REARDON, LLP

and effect relationship has not been established between the consumption of glucosamine hydrochloride and a reduced rate of cartilage degeneration in individuals without osteoarthritis." EFSA Panel on Dietetic Products, Nutrition and Allergies, Scientific Opinion on the substantiation of a health claim related to glucosamine hydrochloride and reduced rate of cartilage degeneration and reduced risk of osteoarthritis, *EFSA Journal* 7(10):1358 (2009).

72.    In a separate opinion from 2009, an EFSA panel examined the evidence for glucosamine (either hydrochloride or sulfate) alone or in combination with chondroitin sulfate and maintenance of joints. The claimed effect was "joint health," and the proposed claims included "helps to maintain healthy joint," "supports mobility," and "helps to keep joints supple and flexible." Based on its review of 11 human intervention studies, three meta-analyses, 21 reviews and background papers, two animal studies, one in vitro study, one short report, and one case report, the EFSA panel concluded that "a cause and effect relationship has not been established between the consumption of glucosamine (either as glucosamine hydrochloride or as glucosamine sulphate), either alone or in combination with chondroitin sulphate, and the maintenance of normal joints." EFSA Panel on Dietetic Products, Nutrition and Allergies, Scientific Opinion on the substantiation of health claims related to glucosamine alone or in combination with chondroitin sulphate and maintenance of joints and reduction of inflammation. *EFSA Journal*, 7(9):1264 (2009).

73.    In 2012, EFSA examined the evidence glucosamine sulfate or glucosamine hydrochloride, and a claimed effect of "contributes to the maintenance of normal joint cartilage." Based on its review of 61 references provided by Merck Consumer Healthcare, the EFSA panel concluded that "a cause and effect relationship has not been established between the consumption of glucosamine and maintenance of normal joint cartilage in individuals without osteoarthritis." EFSA Panel on Dietetic Products, Nutrition and Allergies,

23

Case No.

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

1  Scientific Opinion on the substantiation of a health claim related to glucosamine

2  and maintenance of normal joint cartilage. EFSA Journal, 10(5):2691 (2012).

3      74.    In 2009, EFSA published another opinion that addressed the

4  scientific evidence relating to joint health claims about MSM with or without

5  glucosamine hydrochloride, and found "that a cause and effect relationship has

6  not been established between consumption of methylsulfonylmethane, either

7  alone or in combination with glucosamine hydrochloride, and the maintenance of

8  normal joints." EFSA Panel on Dietetic Products, Nutrition and Allergies,

9  Scientific Opinion on the substantiation of health claims related to

10  methylsulfonylmethane alone or in combination with glucosamine hydrochloride

11  and maintenance of joints. *EFSA Journal*, 7(9):1268 (2009).

12      75.    In 2013, the American Academy of Orthopaedic Surgeons updated

13  their 2008 analysis and recommendations (discussed above), and made a

14  "strong" recommendation that neither glucosamine nor chondroitin be used for

15  patients with symptomatic osteoarthritis of the knee. American Academy of

16  Orthopaedic Surgeons, Treatment of Osteoarthritis of the Knee: Evidence-Based

17  Guideline (2d ed. 2013). "Twenty-one studies were included as evidence for this

18  recommendation."

19      76.    Likewise, the American College of Rheumatology ("ACR"), the

20  United Kingdom National Institute for Health and Care Excellence ("NICE"),

21  and the Agency for Healthcare Research and Quality ("AHRQ") (one of the

22  agencies within the United States Department of Health and Human Services)

23  each published clinical guidelines for the treatment of osteoarthritis based on a

24  critical review of published clinical research, including for glucosamine and

25  chondroitin. These professional groups also recommend against using

26  glucosamine or chondroitin for managing the pain, reduced function, and quality

27  of life issues associated with osteoarthritis. Hochberg et al., American College of

28  Rheumatology 2012 Recommendations for the Use of Nonpharmacologic and

Case No.

CLASS ACTION COMPLAINT

Pharmacologic Therapies in Osteoarthritis of the Hand, Hip, and Knee, *Arthritis Care & Research*, 64(4):465-474 (2012); NICE National Institute for Health and Care Excellence. *Osteoarthritis: Care and management in adults*. Clinical guideline 177. Methods, evidence and recommendations (2014); Samson et al., Treatment of Primary and Secondary Osteoarthritis of the Knee. Evidence Report/Technology Assessment, Number 157. *Prepared for Agency for Healthcare Research and Quality, U.S. Department of Health and Human Services*, Publication No. 07-E012 (2007).

77.    The AAOS, ACR, NICE and AHRQ guidelines were based on systematic reviews and/or meta-analyses of all of the available study data. For example, the ACR specifically cited its reliance on the GAIT study coupled with four meta-analyses that "failed to demonstrate clinically important efficacy for these agents": Towheed (2005); Vlad (2007); Reichenbach (2007); and Wandel (2010). The NICE authors' conclusion that practitioners should "not offer glucosamine or chondroitin products" was based on a review that included Towheed (2005), which included 25 glucosamine RCTs, Reichenbach (2007), which included 20 chondroitin RCTs, and seven studies that compared glucosamine plus chondroitin versus placebo. The 2007 AHRQ assessment was based on review of 21 glucosamine/chondroitin studies, including GAIT. The AAOS' 2013 "strong" recommendation against glucosamine and chondroitin was based on expert analysis and meta-analyses of 12 glucosamine studies, 8 chondroitin studies, and one study (GAIT) that assessed both.

## IV.    *The Impact of Defendant's Wrongful Conduct*

78.    Despite clinical studies demonstrating the CVS Health Glucosamine Products' ineffectiveness, Defendant conveyed and continues to convey one uniform joint health message: that the CVS Health Glucosamine Products are joint health supplements effective at supporting and benefiting joint health.

BLOOD HURST & O'REARDON, LLP

Case No.
CLASS ACTION COMPLAINT

00138193

79.   As the seller of the CVS Health Glucosamine Products, Defendant possesses specialized knowledge regarding the CVS Health Glucosamine Products' content and effects of their ingredients, and Defendant is in a superior position to know whether the CVS Health Glucosamine Products work as advertised.

80.   Specifically, Defendant knew, but failed to disclose, or should have known, that the CVS Health Glucosamine Products do not provide the joint health benefits represented and that well-conducted, clinical studies have found the CVS Health Glucosamine Products' primary ingredients unable to support or benefit joint health.

81.   Plaintiff and the Class members have been and will continue to be deceived or misled by Defendant's false and deceptive joint health representations.

82.   Defendant's joint health representations and omissions were a material factor in influencing Plaintiff's and the Class members' decision to purchase the CVS Health Glucosamine Products. In fact, the only purpose for purchasing the CVS Health Glucosamine Products is to obtain the represented joint health benefits.

83.   Defendant's conduct has injured Plaintiff and the Class members because Defendant's CVS Health Glucosamine Products are worthless and do not support or benefit joint health as advertised.

84.   Had Plaintiff and the Class members known the truth about Defendant's CVS Health Glucosamine Products, they would not have purchased the CVS Health Glucosamine Products and would not have paid the prices they paid for the CVS Health Glucosamine Products.

85.   Plaintiff and each Class member were harmed by purchasing Defendant's CVS Health Glucosamine Products because the Products are not effective in providing their advertised benefits. As a result, Plaintiff and each

Case No.
CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

Class member lost money and property by way of purchasing Defendant's ineffective and worthless caplets, capsules, and tablets.

## CLASS DEFINITION AND ALLEGATIONS

86.    Plaintiff, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), brings this action on behalf of the following classes (collectively, the "Class"):

### Multi-State Class

All persons in California and other states with similar laws,[9] who purchased any of Defendant's CVS Health Glucosamine Products for personal use between January 19, 2016, and the date notice is disseminated.

### California Senior Class

All senior citizens who purchased in the state of California any of Defendant's CVS Health Glucosamine Products for personal use between January 19, 2016, and the date notice is disseminated.

87.    In the alternative to the Multi-State Class, Plaintiff brings this action on behalf of the following class:

### California-Only Class

All persons who purchased in the state of California any of Defendant's CVS Health Glucosamine Products for personal use between January 19, 2016, and the date notice is disseminated.

88.    Excluded from the Class is Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the CVS Health Glucosamine Products for resale, all persons who make a timely election to be

---

[9]    While discovery may alter the following, Plaintiff preliminarily avers other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Florida (Fla. Stat. §§ 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. Ann. §§ 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §§ 445.901, *et seq.*); Minnesota (Minn. Stat. §§ 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*); New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, *et seq.*; and Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*) (collectively, the "Class States").

BLOOD HURST & O'REARDON, LLP

00138193

1   excluded from the Class, the judge to whom this case is assigned and any
2   immediate family members thereof, and those who assert claims for personal
3   injury.

4        89.   Certification of Plaintiff's claims for classwide treatment is
5   appropriate because Plaintiff can prove the elements of his claims on a classwide
6   basis using the same evidence as would be used to prove those elements in
7   individual actions alleging the same claims.

8        90.   **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The
9   members of the Class are so numerous that individual joinder of all Class
10  members is impracticable. Defendant has sold many thousands of units of CVS
11  Health Glucosamine Products to Class members.

12       91.   **Commonality and Predominance—Federal Rule of Civil**
13  **Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of
14  law and fact, which predominate over any questions affecting individual Class
15  members, including, without limitation:

16              (a)   Whether the representations discussed herein that Defendant
17                    made about its CVS Health Glucosamine Products were or
18                    are true, misleading, or likely to deceive;

19              (b)   Whether Defendant's conduct violates public policy;

20              (c)   Whether Defendant engaged in false or misleading
21                    advertising;

22              (d)   Whether Defendant's conduct constitutes violations of the
23                    laws asserted herein;

24              (e)   Whether Plaintiff and the other Class members have been
25                    injured and the proper measure of their losses as a result of
26                    those injuries; and

27              (f)   Whether Plaintiff and the other Class members are entitled to
28                    injunctive, declaratory, or other equitable relief.

BLOOD HURST & O'REARDON, LLP

00138193

28

Case No.

CLASS ACTION COMPLAINT

92.   **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

93.   **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

94.   **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class as a whole.

95.   **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer

Blood Hurst & O'Reardon, LLP

Case No.

00138193
CLASS ACTION COMPLAINT

1    management difficulties, and provides the benefits of single adjudication,

2    economy of scale, and comprehensive supervision by a single court.

3                                **CLAIMS ALLEGED**

4                                    **COUNT I**

5    **Violation of the California Unfair Competition Law ("UCL")**

6            **Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

7        96.   Plaintiff incorporates the preceding paragraphs as if fully set forth

8    herein.

9        97.   Plaintiff brings this claim individually and on behalf of the Class.

10       98.   Plaintiff and Defendant are "persons" within the meaning of the

11   UCL. Cal. Bus. & Prof. Code § 17201.

12       99.   The UCL defines unfair competition to include any "unlawful,

13   unfair or fraudulent business act or practice," as well as any "unfair, deceptive,

14   untrue or misleading advertising." Cal. Bus. Prof. Code § 17200.

15       100.  In the course of conducting business, Defendant committed

16   unlawful business practices by, among other things, making the representations

17   (which also constitutes advertising within the meaning of § 17200) and

18   omissions of material facts, as set forth more fully herein, and violating Civil

19   Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) and Business &

20   Professions Code §§ 17200, *et seq.*, 17500, *et seq.*, 21 U.S.C. § 343(r)(6), and the

21   common law.

22       101.  Plaintiff reserves the right to allege other violations of law, which

23   constitute other unlawful business acts or practices. Such conduct is ongoing and

24   continues to this date.

25       102.  In the course of conducting business, Defendant committed "unfair"

26   business practices by, among other things, making the representations (which

27   also constitute advertising within the meaning of § 17200) and omissions of

28   material facts regarding CVS Health Glucosamine Products in its advertising and

BLOOD HURST & O'REARDON, LLP

00138193
**CLASS ACTION COMPLAINT**

labeling, including on the Products' packaging, as set forth more fully herein. There is no societal benefit from false advertising—only harm. Plaintiff and the other Class members paid for a valueless product that is not effective at conferring the benefits promised. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

103.    Further, as set forth in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq*.

104.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Business & Professions Code §§ 17200, *et seq*. also prohibits any "fraudulent business act or practice." In the course of conducting business, Defendant committed "fraudulent business act or practices" by, among other things, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the CVS Health Glucosamine Products in its advertising, including on the Products' packaging and labeling, as set forth more fully herein. Defendant made the misrepresentations and omissions regarding the efficacy of its CVS Health Glucosamine Products, among other ways, by misrepresenting on each and every Product's packaging and labeling that the Products are effective when taken as directed, when, in fact,

BLOOD HURST & O'REARDON, LLP

the representations are false and deceptive, and the CVS Health Glucosamine Products are not effective at conferring the promised health benefits.

105. Defendant's actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §§ 17200, *et seq.*

106. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's CVS Health Glucosamine Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

107. Defendant knew, or should have known, that its material misrepresentations and omissions would be likely to deceive and harm the consuming public and result in consumers making payments to Defendant for CVS Health Glucosamine Products that are valueless and that are not effective in actually supporting, maintaining, improving or benefiting joint health.

108. As a result of its deception, Defendant was unjustly enriched by receiving payments from Plaintiff and the Class in return for providing Plaintiff and the Class CVS Health Glucosamine Products that do not perform as advertised.

109. Unless restrained and enjoined, Defendant will continue to engage in the unlawful, unfair and fraudulent conduct described herein.

110. Accordingly, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, seeks restitution from Defendant of all money obtained from Plaintiff and the other members of the Class collected as a result of Defendant's unfair competition, and for an

CLASS ACTION COMPLAINT

Case No.

1  injunction prohibiting Defendant from continuing and further engaging in its
2  unlawful, unfair and fraudulent conduct, requiring corrective advertising, and
3  awarding all other relief this Court deems appropriate.

**COUNT II**

4

5  **Violation of the California Consumers Legal Remedies Act ("CLRA")**
6  **Cal. Civ. Code §§ 1750, *et seq.***

7  111.  Plaintiff incorporates the preceding paragraphs as if fully set forth
8  herein.

9  112.  Plaintiff brings this claim individually and on behalf of the Class.

10  113.  Plaintiff is a "consumer," Defendant is a "person," and the CVS
11  Health Glucosamine Products are "goods" within the meaning of the CLRA. Cal.
12  Civ. Code §§ 1761(a), (c) and (d).

13  114.  Defendant's sale and advertisement of its CVS Health Glucosamine
14  Products constitute "transactions" within the meaning of the CLRA. Cal. Civ.
15  Code § 1761(e).

16  115.  The CLRA declares as unlawful the following unfair methods of
17  competition and unfair or deceptive acts or practices when undertaken by any
18  person in a transaction intended to result, or which results in the sale of goods to
19  any consumer:

20  (5)  Representing that goods … have … approval, characteristics, …
21       uses [and] benefits … which [they do] not have ….

22  (7)  Representing that goods … are of a particular standard, quality or
23       grade … if they are of another.

24  (9)  Advertising goods …with intent not to sell them as advertised.

25  (16)  Representing that [goods] have been supplied in accordance with a
26        previous representation when [they have] not.

27  Cal. Civ. Code §§ 1770(a)(5), (7), (9) and (16).

28

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

116.  Defendant violated the CLRA by representing that its CVS Health Glucosamine Products are beneficial for joint health, when, in reality, the Products do not provide their advertised benefits and the Products' ingredients are ineffective at improving, supporting, maintaining or benefiting the health of human joints.

117.  Defendant knew or should have known its joint health representations were false and misleading, and that by omitting the ineffectiveness of its CVS Health Glucosamine Products it was omitting a material fact that would alter any consumer's decision to purchase the Products.

118.  Defendant's violations of the CLRA proximately caused injury in fact to Plaintiff and the Class.

119.  Plaintiff and the Class members purchased Defendant's CVS Health Glucosamine Products on the belief that they would receive the advertised joint benefits from the Products. Indeed, no consumer would purchase a joint health supplement unless he or she believed it was effective at providing meaningful joint benefits.

120.  Defendant's CVS Health Glucosamine Products, however, are worthless and are not effective in providing their advertised benefits. Since the CVS Health Glucosamine Products lack any value, Plaintiff and each Class member was injured by the mere fact of their purchase.

121.  Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on behalf of the other members of the Class, seeks a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

122.  Pursuant to Cal. Civ. Code § 1782(a), Defendant was notified in writing by certified mail of the particular violations of Section 1770 of the CLRA, which notification demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected

consumers of Defendant's intent to so act. A copy of the letter is attached hereto as Exhibit B.

123.   If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate, including statutory damages awards under § 1780(b)(1) for the members of the California Senior Class.

124.   Defendant's conduct is fraudulent, wanton, and malicious.

125.   Pursuant to § 1780(d) of the Act, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in the proper forum.

**COUNT III**

**Breach of Express Warranty**

126.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

127.   Plaintiff brings this claim individually and on behalf of the Class.

128.   Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the CVS Health Glucosamine Products. The terms of that contract include the promises and affirmations of fact made by Defendant on its CVS Health Glucosamine Products' labels and through other advertising, as described above. This advertising, including labeling, constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

129.   All conditions precedent to Defendant's liability under this contract has been performed by Plaintiff and the Class.

BLOOD HURST & O'REARDON, LLP

00138193

35

Case No.

1  130.   Defendant breached the terms of this contract, including the express
2  warranties, with Plaintiff and the Class by not providing the CVS Health
3  Glucosamine Products which could provide the benefits described above.

4  131.   As a result of Defendant's breach of its contract, Plaintiff and the
5  Class have been damaged in the amount of the purchase price of the CVS Health
6  Glucosamine Products they purchased.

7  **JURY DEMAND**

8  Plaintiff demands a trial by jury of all claims in this Complaint so triable.

9  **REQUEST FOR RELIEF**

10  WHEREFORE, Plaintiff, individually and on behalf of the other members
11  of the proposed Class, respectfully request that the Court enter judgment in
12  Plaintiff's favor and against Defendant as follows:

13  A.   Declaring that this action is a proper class action, certifying the
14  Classes as requested herein, designating Plaintiff as Class Representative and
15  appointing the undersigned counsel as Class Counsel;

16  B.   Ordering restitution and disgorgement of all profits and unjust
17  enrichment that Defendant obtained from Plaintiff and the Class members as a
18  result of Defendant's unlawful, unfair and fraudulent business practices;

19  C.   Ordering injunctive relief as permitted by law or equity, including
20  enjoining Defendant from continuing the unlawful practices as set forth herein,
21  and ordering Defendant to engage in a corrective advertising campaign;

22  D.   Ordering damages for Plaintiff and the Class;

23  E.   Ordering Defendant to pay attorneys' fees and litigation costs to
24  Plaintiff and the other members of the Class;

25  F.   Ordering Defendant to pay both pre- and post-judgment interest on
26  any amounts awarded; and

27  ///
28  ///

BLOOD HURST & O'REARDON, LLP

36

Case No.

CLASS ACTION COMPLAINT

00138193

G.      Ordering such other and further relief as may be just and proper.

Respectfully submitted,

Dated: February 7, 2019

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
CRAIG W. STRAUB (249032)

By:      *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
cstraub@bholaw.com

CARLSON LYNCH SWEET KILPELA
   & CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA  92101
Tel: 619/762-1910
619/756-6991 (fax)
tcarpenter@carlsonlynch.com

*Attorneys for Plaintiff*

BLOOD HURST & O'REARDON, LLP